Erin E. Byington (UT Bar #13660)
Samuel A. Goble (UT Bar #12102)
BYINGTON & GOBLE, PLLC
130 South Main, Suite 120
Logan, Utah 84321
Telephone: (435)754-7622
Facsimile: (435)213-2813
Email: erin@byingtongoble.com
Email: sam@byingtongoble.com

Carrie Goldberg (NY Bar #4542411)
C.A. GOLDBERG, PLLC
16 Court Street, 33rd Floor
Brooklyn, NY 11241
Telephone: (646)666-8908
Facsimile: (718)514-7436
Email: carrie@cagoldberglaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **DR. LEAH N. TORRES,** | **Civil No. CV** |
| **Plaintiff,** | |
| **vs.** | **COMPLAINT** |
| | **WITH JURY DEMAND** |
| **THE WESTERN JOURNAL, LLC; LIFTABLE MEDIA, INC.; and THE DAILY CALLER, INC.,** | |
| | Honorable Judge |
| **Defendants.** | |

Plaintiff Dr. Leah N. Torres hereby initiates this suit by her attorneys C.A. Goldberg

PLLC, against Defendants as follows:

1

## PRELIMINARY STATEMENT

1. Those who work in abortion rights – performing them, funding them, or furthering access to them – are among the most harassed groups in the United States.  A significant amount of the harassment takes place through online modalities, but the distinction between "online" and "offline" has become increasingly ill defined.

2. The Internet has been weaponized by anti-abortion extremists to amplify and distort information, as a result causing online and offline harassment, stalking, and violence against abortion providers and advocates.

3. Targets of anti-abortion extremists have limited recourse. The harassment is often anonymous, and identifying these bad actors stretches law enforcement's finite resources.

4. Harassment is not protected speech. Harassment, defined as a course of conduct designed to annoy or alarm a victim, is illegal in all fifty states.

5. The instant case involves one woman, an obstetrician-gynecologist whose life was overturned by anti-abortion extremists who were directed to her through media outlets' deliberate dissemination of a lie – that she, Plaintiff Leah Torres, M.D., ("Dr.Torres") performed illegal abortions.

6. Dr. Torres endured a massive campaign of mob harassment. Defendants irrevocably damaged Dr. Torres's life and career by inciting the attack against her through the publishing of deliberatively false statements.

7. As a result of these false publications, and the ensuing mob harassment, Dr. Torres lost her job, was unemployable for months, was forced to relocate from her home and community, and suffered enormous psychological and emotional harm.

8. Plaintiff now files this complaint to seek damages for Defendants' unlawful tortious conduct.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000 and because it is between citizens of different states.

10. Venue is proper in the District Court of Utah because a substantial part of the events or omissions giving rise to the claim occurred in Utah.

11. Utah has jurisdiction over the Defendants pursuant to its Long-Arm statute, Utah Code §78B-3-205.  Under subsection 3 of the statute, Utah has personal jurisdiction over any person (meaning "mean any individual, firm, company, association, or corporation," under § 78B-3-202(1)) responsible for "the causing of any injury within this state whether tortious or by breach of warranty".

12. Utah's Long-Arm statute explicitly reaches the fullest extent possible under the Due Process Clause of the 14th Amendment of the United States Constitution.

## PARTIES

13. At all relevant times Plaintiff Dr. Leah N. Torres was a resident of Salt Lake City, Utah.

14. Defendant The Western Journal, LLC is a Delaware Limited Liability Company, headquartered in Phoenix, Arizona.  It is owned by Defendant Liftable Media, Inc., a Nevada Corporation, also headquartered in Phoenix, Arizona.

15. Defendant The Daily Caller, Inc. is incorporated in Delaware and has an office address of 1920 L Street NW Floor 2, Washington, D.C. 20036.

<u>**FACTS**</u>

16. According to The Feminist Majority Foundation's 2016 National Clinic Violence Survey, anti-abortion violence has escalated to a 20- year high. Although a 2018 study showed a slight improvement, the persistent harassment and stalking of patients, clinic staff, and doctors is still rife.

17. The Internet has given anti-abortion extremists a new way to organize and conspire, to amplify their voices, to stalk their targets, mine personal data about providers and advocates, to rapidly disseminate misleading material, fundraise, all in service of dispatching online and offline attacks.

18. Victims of anti-abortion harassment rarely seek help from the civil court system for fear of stoking the fires of anti-abortion harassers as any retaliation measures often end up being far worse.

19. When harassment occurs online, seeking justice is even more difficult; offenders are frequently cloaked by anonymity. The websites and publications that host the harassment and dissemination of false information also mask the identity of those who control them. Social media companies such as Twitter and Facebook are inept at and/or refuse to protect

those targeted by this harassment.

20. Dr. Torres is a physician specializing in obstetrics and gynecology. In 2012, she moved to Salt Lake City, Utah to practice medicine. Although Plaintiff had training providing abortions, she was not conducting abortion procedures during the time relevant to this proceeding.

21. Dr. Torres maintains a website and personal blog on which she publishes articles about reproductive health.

22. Dr. Torres's writings aim to educate the public about sexual health practices to reduce the rates of sexually transmitted infections, unplanned pregnancy, and abortion.

23. Dr. Torres also maintains an account on Twitter under the name "@LeahNTorres."

24. With approximately 300 million active monthly users, Twitter is one of the largest and most popular social networking sites.  It is considered the "town square of the internet" where users go to discuss their observations, ideas, and express their opinions.   It allows users to post, share, and comment on other users' content, follow other users, and send and receive direct messages.

25. During all times relevant to this proceeding, Dr. Torres's Twitter account was public, meaning that anybody on the internet could view her posts and account page, regardless of whether they were also a Twitter user.

26. Dr. Torres made a habit of tweeting one medical fact per day about her field of medicine – reproductive health.

27. Dr. Torres gradually became a popular Twitter user, and now has just over twenty thousand followers that subscribe to her feed.  Twitter has anointed Dr. Torres' profile page with a blue checkmark, indicating Twitter's verification that Dr. Torres is the actual user of her account.

28. On March 11, 2018, the Twitter user, "@zarbanotzorba" (now renamed "@_RogerThornhill") sent public Tweets to Dr. Torres asking why she performed abortions. Specifically, "@zarbanotzorba" asked via Tweet, "so [i]f its not for the money, is it because you just like infanticide? Do you hear their heartbeats when you lay down at night? Do you hear their screams?"

29. Dr. Torres replied, "No. You know fetuses can't scream, right? I transect the cord 1st so there's really no opportunity, if they're even far enough along to have a larynx.  I won't apologize for performing medicine.  I'm also a 'uterus ripper outer,' if that's how you'd like to define hysterectomy."

30. Anti-Choice activists soon stormed Twitter with the ridiculous claim that Dr. Torres had admitted to murdering babies by cutting their throats.

31. On March 14th Dr. Torres clarified that she was obviously not referring to cutting of the vocal cord but to the transection of the umbilical cord –a legal and widely-practiced abortion method that usually happens during the first trimester. Dr. Torres wrote: "Oh! Yeah, no…the "cord" is the umbilical cord.  That's basic anatomy, come on."

32. Despite Dr. Torres's subsequent statement that she was obviously and clearly referring to the umbilical cord, the Defendants, all purporting to be online "news" journals, deliberately

published the false and malicious lie that Dr. Torres had admitted to cutting babies' throats or vocal cords.

33. On March 14, 2018, Defendant The Daily Caller published an online article titled "'Villain Explaining his Plan' – Ben Shapiro Slams Abortion Doctor for Sickening Tweet" which stated the following: "An abortion doctor recently sent a disgusting tweet about **cutting the throats of fetuses** so they can't scream, angering many who are pro-life." [emphasis added]. It then identified Plaintiff as the author of this tweet.[1]

34. Defendants WesternJournal.com, on its own site and that of its subsidiary, ConservativeTribune.com, published an article on March 17, 2018 which maliciously and deceptively edited Dr. Torres' Tweet to read, "You realize fetuses can't scream, right? I transect the **(vocal)** cord 1st so that there's really no opportunity, if they're even far enough along to have a larynx." [emphasis added] Dr. Torres' original Tweet of course did not contain the word "vocal" in reference to "cord."[2]

35. The Western Journal/Conservative Tribune article contained a link to a "Conservative Tribune by WJ" clip with host Liz Wheeler on One America News Network.  The clip, from a program called "The Tipping Point," was titled "Abortionist Brags About Horrific Procedure: Reality of Abortion." In it, Wheeler states: "This woman is an abortionist.  She says she **cuts the throats of the babies she aborts** so they don't scream." (0:20-0:43 of the clip) [Date not shown] [emphasis added].

---

[1] https://dailycaller.com/2018/03/14/ben-shapiro-abortion-tweet/ (last visited on March 12, 2019)

[2] https://www.westernjournal.com/ct/abortionist-admits-what-she-does/ and https://conservativetribune.com/abortionist-admits-what-she-does/ (last visited on March 12, 2019)

36. Through these publications (hereinafter the "Publications"), the Defendants deliberately and maliciously lied about Dr. Torres' words, casting her as a doctor who commits illegal abortions, a criminal offense, punishable by life in prison.

37. Utah Criminal Code Section 76-7-301.5, states that, "[t]he killing or attempted killing of a live unborn child in a manner that is not an abortion shall be punished as provided in Title 76, Chapter 5, Part 2, Criminal homicide."

38. None of the authors or websites that created the Publications sought comment or clarification about the tweet from Dr. Torres, despite her own follow up statement on March 14th, 2018 which unambiguously stated that she was referring to the umbilical cord in her prior tweet.

39. As a result of the false statements made about Dr. Torres, she was harassed mercilessly online with threats that made her fear for her life.

40. A few examples of the of the harassment posted to Dr. Torres' Twitter feed include:

    (a) GIF file of a noose along with the statement "hang this cu*t from the highest tree"  from @jojonyc1



(b) "She is taking action killing babies, What actions are you taking to stop her?

Time to move beyond complaints." from @Huntericus;



(c) "I think the majority of ppl agree with that guy – if you went ahead and had

someone cut your throat (don't want to hear you scream as you're leaving us)

the world would be a better place from @gpalmmm



(d) "There is a special hell of all hells for #LeahTorres. #MarkMyWords"

@DeplorityReport on May 31st, 2018

(e) "One day u fill fall asleep & have the most realistic dream of ur life. In that dream u will experience & feel every slice, cutting & dismemberment of ur flesh being ripped away piece by piece. The pain from the razor & scalpel tearing muscle & nerve will be without measure. #STOP" @StateOUAll on March 22nd.



41. Examples of direct messages Dr. Torres received on Twitter include:

(a) "I predict you will die a horrible death in the month of April" from @jonnypaget1;

(b) "Burn In Hell, child killer" from @doviesterr;

(c) "Hope you die a slow painful death..you evil sick bitch." From @JPmrnoQHLiOir45).

42. Perhaps most alarming and dangerous were the individuals who researched and published Dr. Torres' personal and professional information to incite others to track her down and physically injure her. Twitter users published her location, workplace, address, phone number, office manager's name:



43. The malicious publication of Plaintiff's personal and professional information, moved the harassment from Twitter into her real physical life. Individuals reported complaints to her state medical board and to her boss.

44. Dr. Torres sought help from Twitter, but the most help they offered her was to block the accounts.

45. On March 14, 2018, fake online patient reviews began hounding Dr. Torres on Google and Vitals.com:

> (a) "It is beyond my comprehension how the heart and soul of a human being can be so vile.  As a friend put it, she is the child of the devil." (Google user Graham Thomson);
>
> (b) Maybe YOU should have been aborted and saved all of us the trouble…" (Google user Stephanie LaHue);

(c)  "This woman is a vile piece of trash who somehow [sic] crawled out of the depths of hell to kill babies in the most sadistic ways possible.  I will never accept this practice while I am alive, never." (Google user Derek P.)

(d) "What a sick disgusting piece of subhuman garbage you are.  Satan is waiting for you.  It's too bad your mother didn't believe in abortion. (Google user Debbie Wilkins);

(e) "This woman is the definition of evil.  Look up her twitter post about cutting babies larynx so they dont scream.  They scream because they are alive, in pain and afraid." (self-verified patient on vitals.com); and,

(f) "I HOPE someone gets you AND yours.  YOU should have been aborted." (self-verified patient on vitals.com)

46. Dr. Torres received death threats and sought assistance from the Federal Bureau of Investigations. The death threats and threats of physical harm she received were particularly shocking and distressing:

(a) "Somebody kill this Bitch" Twitter user "Arthur Talmadge" @art196048 on March 18th, 2018



(b) "wrap a rope around her neck and pull .... and shove her down ...good

riddance.." Facebook user "DeloRin"



(c) "cut your throat will be a great day I hope you burn in hell" Twitter user

@Drego18



When this tweet was reported to Twitter, the user responded as follows:



47. Plaintiff was informed by the Utah Division of Occupational and Professional Licensing, the

State regulatory authority that licenses and regulates physicians, that it received a large

volume of phone calls to its office about her during this period of time, and that many of the calls were from out of state.

48. The malicious sharing of the address and phone number of Dr. Torres' workplace, resulted in repeated calls to her workplace.

49. The harassment and doxing was exacerbated by the publication and dissemination of the defamatory articles, which presented their distorted reading of Dr. Torres' tweet as statements of true fact.

50. On March 15, 2018, Dr. Torres deleted the original Tweet.

51. Dr. Torres' search engine results are irrevocably damaged as a result of the online pile-on she experienced.

52. As a result of the false lies disseminated by Defendants and others, Dr. Torres was separated from her job on March 23, 2018. The notice of the intended separation from the employer referenced a provision of her employment contract relating to "professional reputation."

53. Dr. Torres experienced severe emotional distress and physical suffering as a result of the Publications.  Dr. Torres has suffered consequences including but not limited to: depression, anxiety, weight loss, emotional instability, extreme stress, sleeplessness, sorrow, anhedonia, and lack of focus.

54. The severe emotional distress engendered by Defendants has substantively impacted Dr. Torres' daily life.  Dr. Torres worries constantly about her physical safety, with public events particularly triggering anxiety.  At times she fears for her life, as well as the safety of her family, friends, and close contacts.

55. Dr. Torres suffered professional damage and economic loss as a result of the existence, dissemination, discovery and fallout from the Publications.

56. Dr. Torres was unable to find employment for nine months, from March 2018 to December 2018, and was ultimately forced to leave her home and the state in which she is licensed and relocate to obtain employment.

57. Dr. Torres has been told by recruiters that employers were unwilling to hire her because searching her for her on internet search engines such as Google revealed the false and defamatory Publications.

58. Dr. Torres' separation from her job and inability to find new employment negatively impacted her financially.

59. The inability to find a new job caused her extreme stress and anxiety, as she, like most young professionals, has thousands of dollars of educational debt to repay.  She was often left feeling hopeless, panicking about whether she would be able to pay back her loans, not to mention whether she would ever find new employment in the field she had painstakingly worked for and dedicated her life to.

## **FIRST CAUSE OF ACTION**
### **Defamation and Defamation *Per Se* by Defendants**

60. Plaintiff repeats re-alleges each and incorporates every allegation in Paragraphs through 59 above as if fully set forth herein.

61. Defendants' publications were false and defamatory.

62. Defendant The Daily Caller published an online article on March 14, 2018 ("Villain Explaining his Plan") that stated "An abortion doctor recently sent a disgusting tweet about **cutting the throats of fetuses** so they can't scream .." (emphasis added). This was a false statement of fact.

63. Defendant The Western Journal published the following: "'No,' Torres responded in the Sunday Tweet. 'You realize fetuses can't scream, right? I transect the (vocal) cord 1st so that there's really no opportunity if they're even far enough along to have a larynx.'" It was false and defamatory to allege that Dr. Torres wrote, "I transect the (vocal) cord" because she had actually written "I transect the cord." The addition of the word vocal constituted a false statement of fact.

64. Defendant The Western Journal published Liz Wheeler's comment aired on One America News Network, "This woman is an abortionist. She says she cuts the throats of fetuses so they can't scream." This was a false statement of fact.

65. Each of the Publications concerns Plaintiff's profession as a physician and constitute allegations of professional misconduct that caused her pecuniary loss.

66. Each of the Publications constitute allegations of a serious crime or crimes, to wit: murder and/or manslaughter and/or criminal homicide.

67. A reasonable person viewing or hearing the statements in question could conclude that Dr. Torres was being accused of engaging in illegal activity. In context, the gist of the statements could be construed as defamatory to the Plaintiffs by an average member of the public.

68. A reasonable person viewing or hearing the statements in question would conclude that they were statements of fact, specifically that Dr. Torres had admitted to cutting the throats of fetuses.

69. Each of these Publications were published negligently, at a minimum and/or with gross negligence and/or intentionality.

70. Each of the Publications were published with actual malice. Defendants' knew the content of their defamatory Publications was false, or made the statements with reckless disregard for their truth or falsity.

71. Dr. Torres had posted a follow up tweet to her original tweet on March 14, 2018 that unequivocally stated her tweet referenced fetal umbilical cords. Defendants ignored this clarification.

72. Defendants' defamatory statements were not privileged.

73. Defendants publicly disseminated the defamatory Publications to a vast online audience causing significant damages to Dr. Torres.

74. Defendant's defamatory Publications have injured Dr. Torres' personal and professional reputation and image, and have exposed her to public and private hatred, contempt and ridicule.

75. Defendants knew or should have known that their publication would cause Dr. Torres to suffer harassment, threats, potential violence, professional harm, and pecuniary loss.

76. The aforesaid Publications exposed the Plaintiff to public contempt, ridicule, aversion, disgrace, induced an evil opinion of her in the minds of right-thinking persons, and deprived her of friendly intercourse in society.

77. Defendants' defamatory Publications have and will continue to cause harm to Dr. Torres.  Due to Defendants' conduct, Dr. Torres suffered and continues to suffer substantial damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### False Light Invasion of Privacy

78. Plaintiff repeats re-alleges each and incorporates every allegation in Paragraphs 1 through 77 above as if fully set forth herein.

79. Defendants' Publications, which falsely and inaccurately characterized Plaintiff's words, placed her in a false light to all who read or heard them.

80. The Publications either stated that Plaintiff cuts the throats or vocal cords of fetuses to prevent them from screaming, and that she would speak about it in an offhand manner.

81. The Publications were considered highly offensive to reasonable people, as is clear from the online controversy and subsequent harassment Plaintiff endured from the public as a result of them.

82. Defendants' Publications were made with either knowledge or reckless disregard of the truth or falsity of their statements.

83. Defendants' Publications were widely distributed and caused significant damage to Plaintiff's personal and professional reputation, exposed her to public contempt and ridicule, caused her to be characterized as someone she is not.

### THIRD CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

84. Plaintiff repeats re-alleges each and incorporates every allegation in Paragraphs 1 through 83 above as if fully set forth herein.

85. Each of the Publications either intentionally misrepresented Plaintiff's words, or intentionally neglected to clarify or substantiate Plaintiff's words before disseminating the misrepresentation across the internet.

86. Defendants published these statements with the intent to incite harassment of Plaintiff, subject her to public ridicule, and damage or destroy her reputation and professional status, and they either knew or should have known that this would cause severe emotional distress.

87. Plaintiff did in fact suffer and continues to suffer severe emotional distress as a result of Defendant's action including but not limited to: depression, anxiety, weight loss, emotional instability, extreme stress, sleeplessness, sorrow, anhedonia, and lack of focus.

### FOURTH CAUSE OF ACTION
**Tortious Interference**

88. Plaintiff repeats re-alleges each and incorporates every allegation in Paragraphs 1 through 87 above as if fully set forth herein.

89. Each of the Publications disseminated by Defendants intentionally targeted her profession, and therefore tortuously interfered with her current and prospective economic relations.

90. Plaintiff had an existing contractual relationship with a women's health center in Salt Lake County, Utah as an employee.

91. The Defendants' intentionally interfered with that contractual relationship by wrongfully publishing false statements about Plaintiff.

92. The defamatory Publications ruined her professional status, threatening Plaintiff's job, future employment, and her medical license.

93. The false controversy disseminated by the Publications continued to damage Plaintiff's potential job opportunities as she searched for new employment.

94. Plaintiff suffered significant injury to her reputation and employability, and therefore her livelihood.

**JURY DEMAND**

95. Plaintiff demands a trial by jury on all issues pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE**, Plaintiff demands the following relief:

A. On Plaintiff's First, Second, Third, and Fourth Causes of Action, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, and loss of employment opportunities plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements; and

B.  all such and further relief that this Court may deem just and necessary.

DATED this  13th  day of March, 2019.

BYINGTON & GOBLE, PLLC


/S/ Erin E. Byington
Erin E. Byington
Samuel A. Goble
*Local Counsel for Plaintiff*


C. A. GOLDBERG, PLLC


/S/ Carrie Goldberg
Carrie Goldberg
*Attorney for Plaintiff (Pro Hac Vice Status
Pending)*