FILED
2020 AUG 5 AM 10:10
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DR. LEAH N. TORRES,<br><br>Plaintiff,<br><br>vs.<br><br>THE WESTERN JOURNAL LLC, et al.,<br><br>Defendants. | **ORDER GRANTING THE WESTERN JOURNAL LLC'S AND LIFTABLE MEDIA INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No. 2:19-cv-00175-BSJ<br><br>Judge Bruce S. Jenkins |

This matter is before the Court on The Western Journal LLC's (the "Journal") and Liftable Media Inc.'s ("Liftable" or together with the Journal, the "Liftable Companies") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion").[1] The Court heard oral argument on the Motion on July 21, 2020, Erin Byington appearing on behalf of Plaintiff Dr. Leah N. Torres ("Torres"); Jeffrey J. Hunt, David C. Reymann, and Sara Meg Nielson appearing on behalf of the Liftable Companies; and Michael F. Wunderli appearing on behalf of Defendant The Daily Caller. The Court issued a bench ruling at the conclusion of oral argument on the Motion. The parties submitted competing proposed orders to the court. The Court issues this order to settle the parties' dispute over the proper form of order. For the reasons set forth below and for good cause shown, the Court hereby **GRANTS** the Motion and dismisses Torres's claims against the Liftable Companies in their entirety and without prejudice.

---

[1] ECF No. 22.

## BACKGROUND[2]

Torres is a physician specializing in obstetrics and gynecology with training in abortion procedures, and in March 2018 she was practicing medicine in Utah, though not conducting abortions. During the same period, Torres maintained an active and somewhat popular Twitter account, on which she posted about reproductive health. On March 11, 2018, Torres published a Tweet about abortion responding to another Twitter user, and her Tweet garnered the attention of anti-abortion activists, who characterized Torres's Tweet as a statement that she aborted babies by cutting their throats or vocal cords. On March 17, 2018, an article, which concerned Torres's Tweet, appeared on the main page and in the commentary section of the Journal's website, westernjournal.com (the "Website").

One year later, Torres filed this action against the Liftable Companies and The Daily Caller, Inc. asserting claims of defamation, false light invasion of privacy, intentional infliction of emotional distress, and tortious interference. All of Torres's claims against the Liftable Companies are based upon the Liftable Companies 'publication of the Article. As grounds for this Court's jurisdiction over the Liftable Companies, Torres alleges that the Liftable Companies are subject to Utah's long-arm statute because they caused injury in the state.

In response, the Liftable Companies filed the Motion alleging that this Court lacks personal jurisdiction over them. Torres opposed and eventually requested the opportunity to conduct limited jurisdictional discovery, which request was granted. That discovery involved

---

[2] The facts set forth in this general background section, to the extent they are not controverted by the submissions of the parties regarding personal jurisdiction, are largely drawn from Plaintiff's Complaint (ECF No. 2) and are assumed to be true solely for purposes of this Order.

written discovery to the Liftable Companies and subpoenas to more than two dozen third-party companies. The parties then submitted supplemental briefing on the jurisdictional issue.

Following jurisdictional discovery, the record reveals the Liftable Companies are Delaware entities headquartered in Arizona. There is no evidence offered to show the Journal or Liftable engaged in business, or is licensed to conduct business, in Utah; that either owns, leases, or controls property or assets in Utah; that either maintains employees, offices, agents, bank accounts, or phone/fax listings in Utah; that either has shareholders in Utah; that either has salespeople or recruiters that travel to Utah to visit customers or recruit employees; or that either pays taxes in Utah. Moreover, the Website—which is free of charge and conveys information and opinions rather than offering any product—is not targeted at Utah or any audience specific to Utah, and the Article never mentions Utah and concerns a topic (the abortion debate) that has national significance rather than any particular connection to Utah. While Torres may have resided in Utah at the time the Article was published, there is no evidence the Liftable Companies were aware, at the time of publication, that she was a Utah resident. Finally, Utah viewers of the Website make up roughly one percent of the Website's entire readership, and revenue generated from advertisements directed at Utah is, likewise, roughly one percent of total, worldwide revenue. Though 28 Utah-based companies (out of approximately 22,000) advertise their products and services on the Website, the Liftable Companies utilize a third-party advertising broker to choose and place advertisements on the Website.

## ANALYSIS

This case presents interesting challenges involved with the convergence of controlling personal jurisdiction jurisprudence with advances in electronic publications—in this case, the publication of the Article on the Website.

Torres, as the plaintiff in this action seeking to access this Court's authority over a defendant, has the burden of proving that such authority exists. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). To satisfy that burden a plaintiff must make a prima facie showing of plausible, non-conclusory, and non-speculative facts that, if true, would support the Court exerting personal jurisdiction over the defendant. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2104). And it must do so at the outset. *ITN Flix, LLC v. Hinojosa*, No. 1:13-cv-00022-RJS, 2014 WL 2587692, at *3 (D. Utah June 10, 2014).

Where, the "state long arm statute supports personal jurisdiction to the full extent constitutionally permitted," as in Utah,[3] "due process principles govern the [jurisdictional] inquiry." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Also, due process requires both that the defendant "purposefully established minimum contacts within the forum State" and that "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citation omitted). While the Court's jurisdiction may be based on either general (all-purpose) jurisdiction or specific

---

[3] *Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999) (explaining that Utah's long arm statute extends to the fullest extent permitted by due process).

4

(case-linked) jurisdiction, *Shrader*, 633 F.3d at 1239, Torres has argued only for specific jurisdiction.

The "minimum contacts" test for specific jurisdiction has two requirements: first, that the non-resident defendant purposefully directed its activities at residents of the forum state and, second, that the plaintiff's injuries arise out of those activities. *Shrader*, 633 F.3d at 1239. Where, as here, the alleged injury supposedly stems from a defendant's online activities, the specific jurisdiction inquiry is somewhat specialized. Because "the internet operates 'in 'every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless," specific jurisdiction can be based only "on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Id.* at 1240. In other words, "*the forum state itself must be the focal point of the tort.*" *Id.* at 1244 (internal quotation marks omitted).

As a result, merely maintaining a website that can be accessed by residents of a state does not confer personal jurisdiction over a defendant. *Id.* " Similarly, posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever ... the subject of the posting may reside[.]" *Id.* Rather, "courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.*

These considerations do not support specific jurisdiction here. The Article never mentions Utah, and there is no evidence the Liftable Companies were aware that Torres resided in Utah. Moreover, neither the Website nor the content of the Article uniquely target or have any

5

particular tie to Utah. Thus, neither the Article nor the Website show that Utah is the focal point of the torts Torres alleges.

The Tenth Circuit's analysis in *XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020), explains why the two jurisdictional theories advanced by Torres—the harmful effects test and the market exploitation test—do not alter this conclusion.

Under the harmful effects test, Torres must show (a) an intentional act, (b) expressly aimed at Utah, (c) with knowledge that the brunt of the injury would be felt in Utah. *Shrader*, 633 F.3d at 1239. In this inquiry, "[g]eneral knowledge that a message will have a broad circulation does not suffice." *XMission*, 955 F.3d at 846. "Purposeful direction cannot be satisfied if the website host ... simply wants as many responses as possible but is indifferent to the physical location of the responder." *Id.* at 847.

For all the reasons just explained, Torres has not established that the Liftable Companies expressly aimed their conduct at Utah. Moreover, Torres does not offer evidence that the Liftable Companies knew, at the time of publication, that Torres was a Utah resident, so Torres has failed to show that the Liftable Companies acted with knowledge that any injury would be felt in Utah. A plaintiff cannot establish jurisdiction using the harmful effects test without showing that the defendant actually knew the plaintiff lived in the forum state. *See XMission*, 955 F.3d at 846 ("[E]ach plaintiff made a sufficient showing that defendants knew of the plaintiff's presence in the forum State and intentionally targeted the plaintiff there"). In short, Torres has not produced facts sufficient to meet the harmful effects test.

The same is true of her market exploitation theory. Factors that may suggest market exploitation include "(a) high sales volume and large customer base and revenues and (b)

extensive nationwide advertising or ads targeting the forum state." *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 915 (10th Cir. 2017).[4] Even after conducting jurisdictional discovery, Torres has not adduced facts sufficient to establish market exploitation.

The record reveals one percent of total viewers of the Website are in Utah and that one percent of total revenue is generated from advertisements directed at Utah. This level of activity is insufficient to show the "high sales volume" and "large customer base and revenue" required to exploit the Utah market. *Compare, e.g., uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 427 (7th Cir. 2010) (finding that company exploited Illinois market due to hundreds of thousands of customers in Illinois who sent "many millions of dollars to the company each year" combined with national advertising campaign). As a result, those advertisements cannot support jurisdiction here.[5]

Moreover, advertisements on the Website directed at Utah are not evidence of the Liftable Companies' purposeful direction because the Liftable Companies had no role in choosing or placing those advertisements. "[J]urisdiction must be based on the conduct of the defendant itself." *XMission*, 955 F.3d at 847 (rejecting argument that marketing company (who did not know emails were being sent to Utah) could be held accountable for the conduct of the publishers it paid to send emails). A third party's contacts with the forum generally cannot be imputed to the defendant. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459

---

[4] Additionally, to establish jurisdiction, plaintiff must show the alleged injuries "arise out of or relate to those activities" that exploit the forum market. *See XMission*, 955 F.3d at 849 (quoting *Burger King*, 471 U.S. at 472). Given the court's conclusion that Liftable Companies did not exploit the Utah market, it need not address whether Torres's alleged injuries "arise out of or relate to" Liftable Companies' Utah activities.

[5] Similarly, Torres presented no evidence of a broad, nationwide campaign to generate viewers for the Website or that any such campaign was directed at Utah.

7

(10th Cir. 1996); *see Salfinger v. Fairfax Media Ltd.*, 876 N.W.2d 160, 176-77 (Wis. Ct. App. 2016) (finding that local advertisements on website were not evidence of targeting the forum state because defendant played no role in such placement; user's location and agreements between third parties controlled the process). Though 28 Utah-based companies (out of approximately 22,000) advertise their products and services on the Website, the Liftable Companies utilize a third-party advertising broker to choose and place advertisements on the Website. There is no evidence Liftable Companies were aware of their Utah advertisers prior to discovery in this case.

Ultimately, Torres's presence in Utah is the only connection this forum has to this dispute. But this Court's jurisdictional analysis is not driven by a *plaintiff's* connection to the forum state. *Rockwood Select Asset Fund XI (6)-1, LLC*, 750 F.3d at 1180; *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. ... Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated 'contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King*, 471 U.S. at 475)). As noted in *Shrader*, "plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state." *Shrader*, 633 F.3d at 1245.[6] More is required, and Torres has failed to come forward with anything more.

---

[6] Because Torres has not established that the Liftable Companies purposefully directed their activities at Utah, the Court need not consider any of the remaining elements of the jurisdictional inquiry.

8

As a result, this Court lacks jurisdiction over the Liftable Companies. Torres's claims against the Liftable Companies are hereby dismissed in their entirety and without prejudice.

DATED this 5th day of August 2020.

BY THE COURT

Judge Bruce S. Jenkins
United States District Judge